UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC,<br><br>                                  Plaintiff,<br><br>v.<br><br>JOHN DOE subscriber assigned IP address 75.80.183.104,<br><br>                                 Defendant. | Case No.: 18cv991-LAB (BLM)<br><br>**ORDER GRANTING EX PARTE MOTION TO EXPEDITE DISCOVERY**<br><br>**[ECF No. 4]** |

Currently before the Court is Plaintiff's June 28, 2018 "Ex Parte Application for Leave to Serve a Third Party Subpoena Prior to a Rule 26(f) Conference." ECF No. 4. Because the Defendant has not been identified, no opposition or reply briefs have been filed. Having reviewed Plaintiff's motion and all supporting documents, the Court **GRANTS** the motion for the reasons set forth below.

I. **BACKGROUND**

Plaintiff alleges that it "is the owner of original, award winning motion pictures featured on its subscription-based adult website." ECF No. 4-1 at 6; see also ECF No. 4-2, Declaration of Greg Lansky in Support of Plaintiff's Application ("Lansky Decl."), ¶¶ 3, 32. On May 17, 2018, Plaintiff filed a complaint against John Doe 75.80.183.104 alleging copyright infringement. ECF No. 1 ("Compl."). Plaintiff alleges that Defendant has illegally infringed by downloading and

1

1  distributing forty-two of its copyrighted movies over the BitTorrent File Distribution Network for
2  an extended period of time.  Id. at 2, 4.  Plaintiff describes the BitTorrent network as a "system
3  designed to quickly distribute large files over the Internet."  Id. at 4.  Plaintiff further alleges
4  that Defendant, who "attempted to hide this theft by infringing Plaintiff's content anonymously"
5  can be identified by his or her Internet Service Provider ("ISP"), Spectrum ("Time Warner
6  Cable"), through his or her IP address 75.80.183.104.  Id. at 2.
7       On June 28, 2018, Plaintiff filed the instant motion.  ECF No. 4.  Plaintiff seeks an order
8  from the Court allowing it to serve a subpoena to Defendant's ISP seeking Defendant's true
9  name and address pursuant to Federal Rule of Civil Procedure 45.  ECF No. 4-1 at 7.

## II. DISCUSSION

### A. The Cable Privacy Act

The Cable Privacy Act generally prohibits cable operators from disclosing personally identifiable information regarding subscribers without the prior written or electronic consent of the subscriber.  47 U.S.C. § 551(c)(1).  However, a cable operator may disclose such information if the disclosure is made pursuant to a court order and the cable operator provides the subscriber with notice of the order.  47 U.S.C. § 551(c)(2)(B).  A cable operator is defined as "any person or group of persons (A) who provides cable service over a cable system and directly or through one or more affiliates owns a significant interest in such cable system, or (B) who otherwise controls or is responsible for, through any arrangement, the management and operation of such a cable system."  47 U.S.C. § 522(5).  Accordingly, Plaintiff seeks an order instructing Time Warner Cable to produce documents and information sufficient to identify the user of the specified IP address.  See ECF No. 4-1 at 17.

### B. Early Discovery

A party may not seek discovery from any source before the Rule 26(f) conference unless that party first obtains a stipulation or court order permitting early discovery. Fed. R. Civ. P. 26(d)(1).  Courts in the Ninth Circuit apply the "good cause" standard in deciding whether to permit early discovery.  Semitool, Inc. v. Tokyo Electron America, Inc., 208 F.R.D. 273, 276 (N.D. Cal. 2002) (adopting the conventional standard of "good cause" in

evaluating a request for expedited discovery). Good cause exists "where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." Id. Good cause for expedited discovery has been found in cases involving claims of infringement and unfair competition. Id. In infringement cases, expedited discovery is frequently limited to allowing plaintiffs to identify Doe defendants. See UMG Recordings, Inc. v. Doe, 2008 WL 4104207, at *3 (N.D. Cal. Sept. 4, 2008) (granting leave to take expedited discovery for documents that would reveal the identity and contact information for Doe defendant).

District courts in the Ninth Circuit apply a three-factor test when considering motions for expedited discovery to identify certain defendants. Columbia Ins. Co. v. seescandy.com, 185 F.R.D. 573, 578-80 (N.D. Cal. 1999). First, the plaintiff should "identify the missing party with sufficient specificity such that the Court can determine that the defendant is a real person or entity who could be sued in federal court." Id. at 578. Second, the plaintiff must describe "all previous steps taken to locate the elusive defendant" to ensure that plaintiff has made a good faith effort to identify the defendant. Id. at 579. Third, plaintiff should establish that its lawsuit could withstand a motion to dismiss. Id.

1. Identification of Missing Party with Sufficient Specificity

First, Plaintiff must identify the Doe defendant with sufficient specificity to enable the Court to determine that the Doe defendant is a real person subject to the Court's jurisdiction. Id. at 578. "Some district courts in the Ninth Circuit have determined that a plaintiff identifies Doe defendants with sufficient specificity by providing the unique IP addresses assigned to an individual defendant on the day of the allegedly infringing conduct, and by using 'geolocation technology' to trace the IP addresses to a physical point of origin." 808 Holdings, LLC v. Collective of Dec. 29, 2011 Sharing Hash E37917C8EEB4585E6421358FF32F29C D63C23C91, No. 12cv00186 MMA(RBB), 2012 WL 12884688, at *4 (S.D. Cal. May 8, 2012); see e.g., OpenMind Sols., Inc. v. Does 1-39, No. C 11-3311 MEJ, 2011 WL 4715200, at *2 (N.D. Cal. Oct. 7, 2011) (finding plaintiff met its burden to identify the Doe defendants with sufficient specificity by identifying the unique IP addresses of individuals engaged in BitTorrent protocol

1  and using geolocation technology to trace the IP addresses to a point of origin within the state
2  of California); Pink Lotus Entm't, LLC v. Does 1-46, No. C-11-02263 HRL, 2011 WL 2470986, at
3  *3 (N.D. Cal. June 21, 2011) (same).  "Others have found that merely identifying the IP
4  addresses assigned to the defendants on the day of the purported infringement is sufficient to
5  satisfy the first factor."  808 Holdings, LLC, 2012 WL 12884688, at *4; see e.g., First Time
6  Videos, LLC v. Does, No. C 11-01675 LB, 2011 WL 1431619, at *2 (N.D. Cal. Apr. 14, 2011)
7  ("First, First Time Videos has identified the Doe defendants with sufficient specificity by
8  submitting a chart listing each of the defendants by the IP address assigned to them on the day
9  it alleges the particular defendant engaged in the infringing conduct.").

    Here, Plaintiff has provided a declaration from Tobias Fieser, an employee of IPP International UG ("IPP"), a company it hired that "monitors the BitTorrent file distribution network for the presence of copyrighted works" and uses software that "identifies Internet Protocol ('IP') addresses that are being used by infringers to distribute copyrighted works within the BitTorrent File Distribution Network" to compile data relating to the IP address at issue. ECF No. 4-2, Declaration of Tobias Fieser ("Fieser Decl."), ¶¶ 3-7.  Mr. Fieser states that IPP determined that John Doe's IP address (75.80.183.104) distributed multiple pieces of Plaintiff's copyrighted movies (listed in Exhibit A to the complaint) and that the address "is associated with significant long term BitTorrent use."  Id. ¶¶ 7, 12.  He also states that the movie pieces were recorded in a packet capture ("PCAP"), a "forensically sound interface for recording network traffic" that records the time which correlates to assignment logs maintained by ISPs in the United States to track which IP address is assigned to which customer at any given time. Id. ¶ 8.  Mr. Fieser explains that digital files can be identified by their Cryptographic Hash Values and that IPP was able to determine that the files being distributed by Defendant's IP address "have a unique identifier of the Cryptographic Hash outlined on Exhibit A [to Plaintiff's complaint]."  Id. ¶ 10.

    Plaintiff also provided a declaration from Emilie Kennedy, Plaintiff's in-house counsel, in which Ms. Kennedy states that she is tasked with working with Plaintiff's investigators to monitor infringement of its motion pictures, "and in coordination with [its] outside counsel," identifying

IP addresses "that are extensively infringing [its] content." ECF No. 4-2, Declaration of Emilie Kennedy ("Kennedy Decl."), ¶¶ 2-4. Ms. Kennedy states that she referenced Defendant's IP address against an IP geolocation database maintained and updated by Maxmind, "an industry-leading provider of IP address intelligence and online fraud detection tools," to determine both the ISP of the Defendant and that Defendant's IP address traced to a city inside this District. Id. ¶¶ 6-8. Ms. Kennedy also states that Maxmind's geolocation tracing service is "99.8% accurate on a country level, 90% accurate on a state level, [and] 87% accurate on a city level for the U.S. within a 50 kilometer radius." Id. ¶ 10. Ms. Kennedy attests that Plaintiff "first inserted Defendant's IP address into Maxmind's Geolocation Database in early September 2017" and learned that it traced to a location in San Diego, California. Id. ¶11. Ms. Kennedy further states that each time Plaintiff received additional data from IPP, it used Maxmind's database to confirm that Defendant's IP address traced to San Diego, including additional checks on May 17, 2018 and June 28, 2018. Id. ¶¶ 12, 13, 15.

Furthermore, Plaintiff provided the declaration of Susan B. Stalzer, an employee of Plaintiff who reviews the content of its motion pictures and was tasked with reviewing contents of the infringing files identified in Exhibit A to the complaint and comparing them to Plaintiff's original work. ECF No. 4-2, Declaration of Susan B. Stalzer ("Stalzer Decl."), ¶¶ 3, 7-10. Ms. Stalzer states that she also "used American Registry for Internet Numbers ('ARIN') to confirm that the ISP Time Warner Cable did own Defendant's IP address at the time of the infringements [as listed in Exhibit A], and hence has the relevant information to identify Doe Defendant." Id. ¶ 11. The dates of the alleged infringing activity in Exhibit A range from April 30, 2017 through March 31, 2018. ECF No. 1-2 at 2-4.

Because Plaintiff has provided the Court with the unique IP address and the dates and times of connection, the name of the ISP and/or cable operator that provided Internet access for the user of the identified IP address, and used Maxmind geolocation technology, the Court finds that Plaintiff has made a sufficient showing that Doe 75.80.183.104 likely resolves to a real person or entity with a physical address in this District. See 808 Holdings, LLC, 2012 WL 12884688, at *4.

### 2. Previous Attempts to Locate Defendant

Second, Plaintiff must describe all prior attempts it has made to identify the Doe defendant in a good faith effort to locate and serve them. See Columbia Ins. Co., 185 F.R.D. at 579. Plaintiff states that it "diligently attempted to correlate Defendant's IP address to Defendant by searching for Defendant's IP address" on various internet search tools; by researching sources of authority such as legislative reports and informational technology guides for other means of identification; and by consulting with computer investigators and cyber security experts. ECF No. 4-1 at 13-14. Plaintiff states that despite these efforts, it is unable to obtain the identity of the alleged infringer because Defendant's IP address is "assigned to Defendant by his or her [ISP], which is the only party with the information necessary to identify Defendant by correlating the IP address with John Doe's identity." See id. at 6, 14. Plaintiff also provides a declaration from Philip Pasquale, a tech advisor with a cyber security firm, in which Mr. Pasquale states that "[b]ased on [his] experience in similar cases, Defendant's ISP Time Warner Cable is the only entity that can correlate the IP address to its subscriber and identify Defendant as the person assigned the IP address 75.80.183.104 during the time of the alleged infringement." ECF No. 4-2, Declaration of Philip Pasquale ("Pasquale Decl."), ¶¶ 3, 10. Based on the above, the Court finds that Plaintiff has made a good faith effort to identify and locate the Doe defendant.

### 3. Whether Plaintiff Can Withstand a Motion to Dismiss

"[A] plaintiff who claims copyright infringement must show: (1) ownership of a valid copyright; and (2) that the defendant violated the copyright owner's exclusive rights under the Copyright Act." Ellison v. Robertson, 357 F.3d 1072, 1076 (9th Cir. 2004) (citations omitted). "To prove a claim of direct copyright infringement, a plaintiff must show that he owns the copyright and that the defendant himself violated one or more of the plaintiff's exclusive rights under the Copyright Act." Id. (citation omitted).

/ / /

/ / /

/ / /

Plaintiff provides evidence that it is the exclusive rights holder of the copyrighted works at issue. See ECF No. 1-2 at 2-4 ("Exhibit A")[1]; Lansky Decl. ¶ 3; Stalzer Decl. ¶¶ 7-10. Plaintiff alleges that between April 30, 2017 and March 31, 2018, Defendant infringed Plaintiff's copyrighted work by copying and distributing "the constituent elements of Plaintiff's [w]orks" by using the BitTorrent file distribution network. See Compl. at 6; ECF No. 1-2 at 2-4. Plaintiff further alleges that it did not authorize, permit or consent to Defendant's copying or distributing this work. Compl. at 6-7. Accordingly, Plaintiff has alleged the prima facie elements of direct copyright infringement and could withstand a motion to dismiss. See Ellison, 357 F.3d at 1076; Columbia Ins. Co., 185 F.R.D. at 379-80.

## III.  CONCLUSION

Having found good cause, the Court **GRANTS** Plaintiff's motion for expedited discovery. For the foregoing reasons, it is hereby ordered that:

1. Plaintiff may serve a subpoena pursuant to Federal Rule of Civil Procedure 45, on Time Warner Cable (Spectrum) that seeks only the true name and address of the subscriber assigned IP address 75.80.183.104. Plaintiff shall not subpoena additional information;

2. Plaintiff may only use the disclosed information for the purpose of protecting its rights in pursuing this litigation;

3. Within fourteen (14) calendar days after service of the subpoena, Time Warner Cable (Spectrum) shall notify the subscriber that his or her identity has been subpoenaed by Plaintiff. The subscriber whose identity has been subpoenaed shall have thirty (30) calendar days from the date of such notice to challenge the disclosure by filing an appropriate pleading with this Court contesting the subpoena;

4. If Time Warner Cable (Spectrum) wishes to move to quash the subpoena, it shall do so before the return date of the subpoena. The return date of the subpoena must allow for

---

[1] Plaintiff states in its complaint that Exhibit A consists of a table containing United States Copyright Office registration information, including registration numbers or application numbers for those works where registration is still pending before the Copyright Office in compliance with the Copyright Act, 17 U.S.C. §§ 101, et seq. Compl. at 6.

at least forty-five (45) days from service to production. If a motion to quash or other customer challenge is brought, Time Warner Cable (Spectrum) shall preserve the information sought by Plaintiff in the subpoena pending resolution of such motion or challenge; and

5. Plaintiff shall serve a copy of this Order with any subpoena obtained and served pursuant to this Order to Time Warner Cable (Spectrum). Time Warner Cable (Spectrum), in turn, must provide a copy of this Order along with the required notice to the subscriber whose identity is sought pursuant to this Order.

**IT IS SO ORDERED**.

Dated: 7/2/2018

Hon. Barbara L. Major
United States Magistrate Judge